NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

PARR LANCE AMBULANCE SERVICE, Respondent.

No. 82–2724.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1983.

Decided Dec. 14, 1983.

Pat Wynns, Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

Michael V. Gooch, Harrison & Moberly, Indianapolis, Ind., for respondent.

Before BAUER and WOOD, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Parr Lance Ambulance Service ("Parr Lance") asks this court to deny enforcement of an order issued by the National Labor Relations Board ("the Board"). The Board determined that Parr Lance violated section 8(a)(1) of the National Labor Relations Act (29 U.S.C. § 158(a)(1) (1976)) by discharging ambulance driver Timothy Smith for refusing to operate an ambulance lacking certain emergency medical equipment required by state law. We affirm the Board's determination that Parr Lance discharged Smith for engaging in protected activity, and order enforcement of the Board's ruling requiring reinstatement.

## I. *Background*

Parr Lance provides ambulance and related services in Indianapolis, Indiana. Indiana law requires that ambulance providers be certified by the Indiana Emergency Medical Services Commission ("EMSC"), and that certified ambulances carry certain equipment at all times. Each ambulance at Parr Lance is assigned a driver and an emergency medical technician ("EMT") who are, together, responsible for checking the ambulance and its equipment each day. Although ambulance drivers' official duties are limited to checking the condition of the ambulance (*e.g.,* the body condition, tires, engine operation, etc.), they also assist the EMTs in using ambulance equipment to provide patient care.

Timothy Smith was an ambulance driver for Parr Lance. On March 4, 1981, Smith

and fellow employee Tine Martin, an EMT, had a meeting with management personnel of Parr Lance to discuss a disagreement between Smith and a dispatcher. During the course of this meeting both Smith and the EMT complained that the company's ambulances lacked certain medical equipment required by state law.

On April 4, 1981, Smith and Nancy Stewart, the EMT assigned to his ambulance that day, inspected their ambulance and discovered that it lacked certain items of required medical equipment. Smith presented a list of the missing equipment to the Parr Lance dispatcher, and requested a different ambulance. The dispatcher told Smith that he had to take the assigned ambulance, but the dispatcher agreed to call Jones, the ambulance division supervisor.

While waiting to hear from Jones, Smith and Stewart completed two routine, non-emergency runs. They refused a third run and then returned to the base. Jones had been there earlier, but was gone again, so the dispatcher called in Michael Shonkwiler, the company manager.[1] Smith informed Shonkwiler that the ambulance lacked a considerable amount of equipment and that he would not take in out in that condition. Stewart said that she agreed with Smith. Shonkwiler told them that if they felt that way, they should clock out and go home. Smith then clocked out and left.

Stewart, who was upset and crying, remained outside the dispatch office. Smith stopped and told Stewart that he was going to the EMSC and the Labor Board, so she should not worry. After Smith left, the dispatcher asked Shonkwiler if she could assign Stewart to another partner for the remainder of the day. Shonkwiler agreed, and Stewart continued to work.

On April 5, 1981, Smith arrived at work and asked for his time card. The dispatcher informed Smith that Shonkwiler had taken him off the schedule.

Thereafter, Smith and EMT Tine Martin went to the EMSC to complain about Parr Lance's failure to maintain required medical equipment on their ambulances. The EMSC subsequently inspected Parr Lance's ambulances and found that they lacked a significant amount of equipment.

Based on the above facts, the Board affirmed the Administrative Law Judge's finding that Parr Lance violated section 8(a)(1) of the National Labor Relations Act by discharging Smith for his refusal to operate an ambulance lacking proper medical equipment.[2] The Board ordered Parr Lance to reinstate Smith, to make him whole for any loss of pay he suffered, and to expunge from its records any reference to Smith's discharge.

■ Parr Lance asserts that Smith did not engage in protected activity, arguing that Smith's concern over missing medical equipment did not relate to working conditions, and that Smith did not act in concert with anyone in refusing to operate his assigned ambulance. In reviewing the Board's determination we must keep in mind that Congress intended that the protections of section 7 be "broadly construed," see *Eastex, Inc. v. NLRB,* 437 U.S. 556, 567 n. 17, 98 S.Ct. 2505, 2513 n. 17, 57 L.Ed.2d 428 (1978), and provided that the Board is to determine in the first instance whether a specific activity is protected. *Id.* at 568, 98 S.Ct. at 2513. We will not reposition a line drawn by the Board between protected and unprotected behavior unless the Board's line is " 'illogical or arbitrary.' " *NLRB v. Ben Pekin Corp.,* 452 F.2d 205, 207 (7th Cir.1971) (per curiam) (quoting *NLRB v. Thor Power Tool Corp.,* 351 F.2d 584, 587 (7th Cir.1965)). We are not persuaded that the Board's determination is illogical or arbitrary, and affirm its ruling that Smith's refusal to operate the ill-equipped ambu-

---

1. Portions of the record refer to the manager as Mikel Shonkwiler.

2. Section 8(a)(1) (29 U.S.C. § 158(a)(1) ) makes it an unfair labor practice to interfere with the exercise of section 7 rights. Section 7 (29 U.S.C. § 157) guarantees employees the right to engage in "concerted activities for . . . mutual aid or protection."

lance qualified as concerted activity related to a working condition.

## II. *Working Conditions Requirement*

Parr Lance argues that Smith's concern over missing emergency equipment relates to patient care rather than to conditions involved in his own driving or maintenance of his ambulance, and thus should not qualify as a concern over working conditions. We do not agree that a health care employee who complains about inadequate medical equipment fails to qualify for protection simply because he may be motivated by a concern for patient welfare. Neither do we agree that an ambulance driver's working conditions are limited solely to conditions that affect his own driving or maintenance of his ambulance.

In the health care field patient welfare and working conditions are often "inextricably intertwined." *Misericordia Hospital Medical Center v. NLRB,* 623 F.2d 808, 813 (2d Cir.1980). Inadequate medical equipment can affect a health care provider's ability to properly care for a patient. To the extent that an employee's duties relate to providing patient care, therefore, a lack of necessary medical equipment affects both the patient's welfare *and* the working conditions of the health care provider.

■ Parr Lance contends, however, that adequacy of patient care cannot, in and of itself, form the basis for protected activity. Parr Lance concludes that Smith is not protected because he was motivated *solely* by a concern for patient welfare. The motives of an employee who takes an action related to working conditions is irrelevant in determining whether the action is protected. *Dreis and Krump Manufacturing Co. v. NLRB,* 544 F.2d 320, 328 n. 10 (7th

Cir.1976). Even if a health care employee phrases a complaint about a situation solely in terms of its effect on patient welfare, the employee is protected if the situation relates to a working condition. *Cf. Misericordia,* 623 F.2d at 811 (preparation of a report listing " 'serious deficiencies in the quality of care at Misericordia Hospital' " protected where complaints relating to patient welfare also relate to things that affect the nurses' performance of their duties).

■ An ambulance driver is a member of an emergency medical assistance team. Although a driver and an EMT have different primary functions on that team, they both work toward the common goal of providing prompt, appropriate medical care. EMT Stewart testified without contradiction that part of a driver's duties include assisting the EMT in using emergency equipment when necessary. That Smith was an ambulance driver rather than an EMT, therefore, does not mean that his official duties were so divorced from providing patient care that adequacy of medical equipment bore no relation to Smith's working conditions. If Smith was a car mechanic who simply serviced Parr Lance's ambulances, the Board and this court may have reached a different result. But such is not the case.[3]

The Administrative Law Judge noted that the failure to provide proper care because of missing equipment could subject Smith, as a member of an emergency assistance team, to a civil suit for damages:

> [I]t is possible that both [Smith] and the EMT could be the subject of a lawsuit if they, acting as a team, failed to provide adequate emergency medical care to a patient because they lacked the state required equipment to do so.

**3.** Just as the relationship between Smith's employment and providing patient care distinguishes Smith's case from that of a car mechanic, it also distinguishes Smith's case from *Daniel International,* 104 L.R.R.M. 1496 (1980) (advice memorandum of NLRB General Counsel), cited by Parr Lance to support their argument that concern over the quality of patient care cannot form the basis of a protected activity. In *Daniel,* the complaints of a construction worker involved in the construction of a nuclear power plant were held not protected because they related solely to the safety of the general public rather than to the safety of identifiable employees. The relationship between the construction worker and the general public is qualitatively different than the relationship between Smith and the patients his ambulance is called on to assist.

*Parr Lance Ambulance Service,* 262 N.L.R.B. 1284, 1287 (1982). Parr Lance denies that Smith could be liable for damages caused by a lack of necessary equipment, and argues further that Smith's acts should not be protected in any event because Smith never stated or implied that his concern in refusing to operate the ambulance on April 4 had anything to do with fear for his personal liability. Both of these arguments miss the mark. First, it is certainly arguable that operating an ambulance, knowing that it lacks state-required equipment, might constitute negligence.[4] Second, as we have already explained, the concerns that motivate an employee to take an action are irrelevant to determining whether the action is protected. We affirm the Board's conclusion that adequacy of emergency medical equipment qualifies as a working condition for Smith.[5]

### III. *Concerted Activity Requirement*

Parr Lance also asserts that Smith's refusal to operate his ill-equipped ambulance does not qualify as concerted activity. Parr Lance bases its argument on Stewart's failure to clock out with Smith. We are not persuaded.

An employee need not have fellow employees join him in every step he takes in order for his actions to qualify as protected, concerted activity. In *Steere-Dairy, Inc.,* 237 N.L.R.B. 1350 (1978), for example, three truck drivers were concerned about the effect that a change from plastic to glass milk containers would have on their work and their pay. After the three drivers discussed the matter, David Watkins, one of the drivers, called the company president to protest the switch. The president responded that if the drivers did not like the glass containers, they could " 'get the hell out.' " *Id.* at 1351. Watkins then walked off the job; the other two eventually ran their routes. Watkins returned on his next working day, but was told to turn in his key.

Like Parr Lance, Steere-Dairy argued that a walkout by one employee cannot qualify as concerted activity. The Board, however, ordered Steere-Dairy to reinstate Watkins. Simply because one employee carries a protest farther than other employees does not necessarily mean that the more active employee loses the protection of the Act. To hold otherwise would unduly restrict the rights guaranteed by section 7.

Although Stewart did not ultimately clock out with Smith, they both refused to take a third run in their ill-equipped ambulance, and they both returned to the base and complained about the missing equipment to Shonkwiler. Shonkwiler responded by telling them both to clock out.[6] Clock-

---

**4.** Thus, unlike the construction employee in *Daniel International, supra* note 3, Smith did have an objective reason to believe that he could be personally liable for harm resulting from the ambulance's lack of required medical equipment. The possibility of personal liability, however, merely aids in determining whether an activity relates to a condition of employment. As we explain above, that Smith may have been motivated by concerns other than fear for his personal liability does not deprive him of protection to which he is otherwise entitled. *See Dreis,* 544 F.2d at 328 n. 10.

**5.** Relying on *Eastex,* 437 U.S. at 564, 98 S.Ct. at 2511, and *Fort Wayne Corrugated Paper Co. v. NLRB,* 111 F.2d 869, 874 (7th Cir.1940), the Board argues that even if adequacy of medical equipment qualifies as a working condition only for EMTs, Smith's refusal to operate an ill-equipped ambulance with EMT Stewart would be protected since the Act also protects activity aimed at improving other employees' working conditions. Because we find that ade-

quacy of medical equipment does qualify as a working condition for Smith, we need not reach this issue.

**6.** Stewart testified before the Board that Shonkwiler "asked us if *we* refused to take the ambulance out because of the equipment missing. *We said yes.* I said that I agreed with Tim that the equipment was missing. He told us if we both felt that way to clock out." Record at 102 (emphasis added).

Parr Lance emphasizes the sentence: "I said that I agreed with Tim that the equipment was missing," to support the position that Stewart and Smith *never* acted together, but that Stewart merely agreed, when asked, that equipment was missing. Although it is possible to argue that the testimony is somewhat unclear as to what Stewart actually said to Shonkwiler, we find that the Board's interpretation of Stewart's testimony is not only plausible, but that it is more reasonable than Parr Lance's.

ing out, then, was the final step Smith took down a path Smith and Stewart set out on together. That Stewart subsequently decided to go on further runs that day does not render unprotected the activities that ultimately led to Smith's discharge and that were begun by Stewart and Smith acting together.

Moreover, clocking out was not an idea that originated with Smith, but was a step taken under the direction of Shonkwiler, who was responding to the actions of both Smith and Stewart. As the Administrative Law Judge specifically found, Smith's dismissal occurred not when the dispatcher refused to give Smith his time card on April 5, but when Shonkwiler told Smith and Stewart to clock out on April 4.[7] Although Stewart did not clock out, the dispatcher did not allow Stewart to go on further runs that day until Shonkwiler gave his permission. It was the concerted activities engaged in by Smith and Stewart that provoked Shonkwiler to dismiss Smith; Smith's act of actually clocking out merely cast the dismissal in stone. Smith is therefore entitled to enforcement of the Board's order. Stewart's reluctance to actually follow Smith out the door does not suddenly deprive Smith of the protection he otherwise deserves.

■ Moreover, Smith is entitled to protection under the Act regardless of whether Stewart literally acted in concert with him. An employer violates the Act when he retaliates against an employee in the mere *belief* that the employee is engaging in protected activity—even if the belief is unfounded. *Henning & Cheadle, Inc. v. NLRB,* 522 F.2d 1050, 1052 (7th Cir.1975). Shonkwiler's statement that Stewart and Smith should *both* clock out indicates that Shonkwiler believed they were acting in

concert, and, in effect, dismissed them both. Shonkwiler left the confrontation with Stewart and Smith without asking either of them whether they were going to follow his direction to clock out. Therefore, even if Stewart never really intended to carry her protest as far as Smith did, Parr Lance violated the Act by simply telling Smith and Stewart that they should clock out if they did not want to operate an ill-equipped ambulance.[8]

Substantial evidence supports the Board's finding that Parr Lance dismissed Smith for engaging in protected activity. The Board's order is enforced.

---

7. Parr Lance does not dispute the validity of this finding by the Administrative Law Judge.

8. Citing *Steere-Dairy, Inc.,* 237 N.L.R.B. 1350, 1351 (1978), the Administrative Law Judge also found that even if Stewart and Smith did not literally act in concert, concerted activity can be accomplished by a single individual when such activity relates to matters of mutual concern to all affected employees. *See also Keo-*

*kuk Gas Service Co. v. NLRB,* 580 F.2d 328, 333 (8th Cir.1978); *Randolph Division, Ethan Allen, Inc. v. NLRB,* 513 F.2d 706, 708–09 (1st Cir.1975). We agree with the Board, however, that it is unnecessary to reach this issue because Stewart and Smith did actually engage in concerted activity.