Thomas **RYAN** and Beverly Eileen Ryan, Plaintiffs-Appellants,

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 675,** Defendant-Appellee.

No. 85–5751.

United States Court of Appeals, Eleventh Circuit.

July 24, 1986.

Gerald E. Rosser, Miami, Fla., for plaintiffs-appellants.

Jayne E. Zanglein, IUOE LOCAL 675, Pompano Beach, Fla., for defendant-appellee.

Before FAY, Circuit Judge, HENDERSON * and NICHOLS **, Senior Circuit Judges.

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

NICHOLS, Senior Circuit Judge:

This appeal places before us the novel contention that a collective bargaining agreement in the construction industry, calling for operation of a "hiring hall" by the International Union of Operating Engineers (IUOE), imposes on the union a duty to refer to the general contractor for employment as operating engineers only persons competent to operate the employer's heavy machinery, and makes it liable in tort in case any incompetent person the union has referred may injure a third party. In the absence of any provision so stating, expressly or by reasonable implication, our answer is in the negative. Plaintiff, Thomas Ryan, a member of a different union, alleges injury to him on the job, inflicted by a member of defendant union. Plaintiff also asserts, in contract counts, that he was a third-party beneficiary of the operating engineers' collective bargaining agreement. The absence of any legal duty owed to the employee to refer only competent people, or to supervise them once on the job, is obviously fatal to the supposed existence of a like duty to any third-party beneficiary, so we need not consider plaintiff's standing as a third party further.

### Proceedings Below

Plaintiffs-Appellants filed this action in the Circuit Court of the Seventeenth Judicial Circuit of the State of Florida, but defendants/appellees petitioned the United States District Court for removal, asserting it was a civil action, of which the United States District Court had original jurisdiction under 29 U.S.C. § 185(a). That Act grants district courts jurisdiction of "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * *." If brought in a state court, such a suit is removable without regard to the citizenship or residence of the parties. 28 U.S.C. § 1441. The original complaint was in three counts of which the

** Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

first, or tort count, alleges negligence by the operator of the crane and the shop steward. The second, or contract count, alleges a breach by the union of obligation under the collective bargaining agreement to the employer and to Mr. Ryan. The third repeats the second, except that Mrs. Ryan alleges loss of society, services, and consortium. Amended complaints do not alter the structure of the causes of action, but add details such as the crane operator was "an oiler named Joe."

The district court on motion dismissed the first count on the ground that merely by "entering into collective bargaining agreements, unions do not impliedly assume a general duty of care to provide a safe environment." Apparently it was applying under its pendent jurisdiction the general common law, or Florida law, since that count does not refer to any federal law as the source of the duties asserted. The court withheld action on a motion to dismiss the other two counts because it did not yet know the employer's identity or the terms of the collective bargaining agreement. On being provided these (employer was Raymond International Builders, Inc.), the court converted the pending motion to dismiss into a motion for summary judgment under Fed.R.Civ.P. 56, while denying a motion by plaintiffs to remand to the state court. All parties were then given reasonable opportunity to present the material pertinent to a summary judgment, as Rule 12(b) requires.

Usually a Rule 56 summary judgment motion generates a plethora of material for the court to consider: pleadings, depositions, answers to interrogatories, admissions on file, "together with the affidavits, if any * * *," employing which the moving party endeavors to show there is no genuine issue of fact and it is entitled to summary judgment as a matter of law. Rule 56(c); see also Rule 56(e). Be it noted that by the latter section, a party may not rely on his pleadings to avoid judgment against him. This case went to summary judgment on an extraordinarily thin record, comprising the aforesaid collective bargaining agreement and, on behalf of Ryan, an affidavit by him, which states that he was a member of the "Millwrights, Piledrivers and Drivers Union, Local 1026," employed by Raymond International Builders, Inc., and that on August 30, 1982, members of defendant union were employed, in common with him, on a project in Fort Lauderdale, Florida. The affidavit further states defendant union had no Craft Foreman or Assistant Craft Foreman responsible to supervise operating engineers and oilers at the site; Lindsley Mosley lacked the requisite qualifications as "construction project steward" (presumably he was the union steward); and on the date given, plaintiff was crushed by a crane operated by an oiler and IUOE member named Joe, who lacked the requisite qualifications to operate such a crane and was not properly supervised.

The court was unable to find anything in the collective bargaining agreement between IUOE and Raymond International that places on IUOE the duty to provide competent employees to Raymond International or to assure the safety of Raymond International's workplace. However, the opinion/order also deals with an issue we deem unnecessary to address, holding that Ryan lacks standing as a third-party beneficiary to enforce rights under the collective bargaining agreement, whatever they might be. It entered summary judgment on the second and third counts for defendant IUOE, the first having been earlier dismissed, and the motion to remand earlier denied. This appeal followed.

### Discussion

■ Taking the motion to remand to the state court first, it is clear to us that the suit below was in all three counts a suit to assert rights under a collective bargaining agreement. Even as to the tort count, Ryan has stated that the duty of care owed him derives from the agreement. He has never been able to designate any other source. The suit was actually, therefore, one for violation of a contract "between an employer and a labor organization," (28 U.S.C. § 185(a)) to the extent all three

counts require interpretation of that contract in order to establish a basis for the litigation. *Cf. Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed. 206 (1985). As that decision holds, any such contract suit under state law is preempted and the federal court jurisdiction is exclusive. As also held in *Allis-Chalmers,* that conclusion is not avoided by dressing up a count to make it sound in tort, with the hope, perhaps, of making it a basis for punitive damages, though actually it depends on the express or implied provision of the contract.

On the other hand, this court has held since *Allis-Chalmers,* and with full reference to its teaching, that a state law tort claim is not preempted in case of a claim by an injured employee which is not a merely dressed-up contract count to secure punitive damages. *Hechler v. International Brotherhood of Electrical Workers,* 772 F.2d 788 (11th Cir.1985), *cert. granted,* — U.S. ——, 106 S.Ct. 1967, 90 L.Ed.2d 652 (1986). In that case the union had a contract with the employer enabling and obliging it to monitor the workplace for safety. Plaintiff was a member of the union. The employer assigned her to work for which, she alleged, she was inadequately trained by the union and she was injured. She said the union owed her a duty to see to it she did no work for which she was not properly trained. While it would require some reference to the collective bargaining agreement to determine what duties the union might owe one of its members in this situation, this court stated that a claim so founded was of only peripheral concern to federal law, because the National Labor Relations Act, in 29 U.S.C. § 185(a), addressed issues connected with the union's duty of fair representation of its members.

■ The second and third counts support the jurisdiction of the federal courts. The district court's decision to dismiss the first count seems, in light of the count itself, to be based on the proposition that *no* law, state or federal, imposes any duty on the union to see to the safety of the employer's workplace in the absence of an express

agreement, or assumption by the union of that responsibility, not alleged in the first count. Thus, issues of preemption of state law do not arise in our review of that decision when the plaintiff can cite *no* law. That is the case here as plaintiffs' counsel admitted he could cite no case, federal or state, that supported the contention he was then making, *i.e.,* that the claim was not under federal law, was not preempted, and should have been remanded as a state law claim, under which law it would be decided. So far as the decision below related to state law, it relied on pendent jurisdiction.

In *Michigan Mutual Insurance Co. v. United States Steelworkers of America,* 774 F.2d 104 (6th Cir.1985) that court holds on authority of *Allis-Chalmers v. Lueck,* federal law preempts any state law claim against a union for personal injury or death at the workplace if it is based on alleged agreement by a union pursuant to a collective bargaining agreement to perform safety services for its members. Under this authority, a remand to the state court would be precluded. It is not inconsistent with *Heckler v. International Brotherhood of Electrical Workers, supra,* of this court, as *Heckler* deals with a union's obligation to train a union member, a right of a different sort, not necessarily based on a union's contract with a third party. For negligent training by the union, a member could have a claim directly against the union. If *Michigan Mutual Insurance Co. v. United States Workers of America* is right, and we see no reason why it is not, the remand of any count here would seem preempted. This being the case, remand to the state court was properly denied.

The court below, in passing on the first or negligence count, cited *Brough v. United Steelworkers of America, AFL–CIO,* 437 F.2d 748 (1st Cir.1971) (Aldrich, *C.J.*). Both parties cite it here. The first or state law theory of that action was that the union safety committee members were the employer's safety advisers, regardless of the nature of their contractual relations. By advising him negligently, they caused injury to plaintiff, a member of the union.

The union removed the action to the district court, asserting it arose under federal law. The plaintiff then added a count for breach of the duty of fair representation. The court of appeals held that this cured the previous want of federal jurisdiction, but the count could not be maintained because the duty of fair representation imposed no general duty of due care. The original first count, however, being based on state law, a state theory as to vicarious liability of safety advisers to injured persons, could have been remanded to the state court and the court of appeals decided to do this, being persuaded that advice by the state court as to the state law would have been needed even if the federal court had retained the case. This decision as to the federal count supports ours, and as to the one under state law, it is not inconsistent. The district judge had not, as here, actually decided the state law question (if there was one); had he done so, there would have been no need for remand to the state court.

The collective bargaining agreement does not, of course, make the "oiler named Joe" an employee of the IUOE, or of anybody except Raymond International, so what duties Joe might owe Ryan, or Joe's employer might owe him under *respondeat superior,* are not for consideration.

As all three counts require more or less interpretation of the collective bargaining agreement, to see what duty it imposes, we now turn to it to examine what it says Ryan, relies primarily on:

### SECTION IV—HIRING HALL

Article 1—All work covered by this Agreement, whether performed by the Employer with its own employees or through subcontractors shall be performed by persons referred from the hiring hall. It is understood that the hiring hall shall be operated on a non-discriminatory basis and in compliance with applicable laws and regulations. No person shall be employed without a referral unless the Union is unable to refer operators within a reasonable time, not less than forty-eight (48) hours, Saturdays, Sundays, and Holidays excluded. It is understood that preference or priority in referrals will be given to local residents, so as to alleviate local unemployment. Local residents, for the purpose of this Section, shall mean those Engineers who continuously, for a period of 12 months, have received their employment through the referral facilities operated by the Union and who have permanent domicile in the geographic jurisdiction of this Agreement.

### SECTION VI—STEWARD

There shall be a Steward on all jobs appointed by the Business Manager or the Business Representative. His duty shall be to look after the interests of the Union. The Stewards shall perform that duty during working hours with no loss of pay. No Employer shall have the right to discharge the Steward unless the Employer has first obtained the express approval of the Business Manager or Business Representative. The Steward shall be a working employee.

### SECTION VIII—WORK RULES

\*       \*       \*       \*       \*       \*

Article 2—SAFETY AND WEATHER PROVISIONS. \* \* \* All safety measures must be observed by both Employer and employees \* \* \*.

\*       \*       \*       \*       \*       \*

### SECTION IX—GENERAL PROVISIONS

\*       \*       \*       \*       \*       \*

Article       5—MANAGEMENTS' Subject to the provisions of this Agreement, the Union recognizes the right of the Employer to make work assignments, manage his operations, schedule his work, direct his working forces, hire, suspend, discharge or layoff employees.

\*       \*       \*       \*       \*       \*

■ There is no provision, express or implied, making it the duty of the union to certify or monitor the competence of persons it refers from the hiring hall. To the

contrary, the obligation, in a "right to work" state such as Florida, to refer nonmembers on their request, is inconsistent with such a duty. The rights of nonmembers to be referred by union hiring halls was considered by this court in *Turner v. Local Lodge*, 755 F.2d 866 (11th Cir.1985). If the union undertook to choose between members and nonmembers, as to their competence, it would place itself in a conflict of interest situation, both it and the employer might want to avoid. The reference to referring "without discrimination" in Section IV, Article 1, refers not only to race, sex, etc., but also to nondiscrimination as between members and nonmembers of the union.

In Section VI, the duties of the union steward on the job are spelled out and do not include monitoring the work place for safety respecting third parties. He is there "to look after the interests of the union."

The Management Rights section, Article 5 of Section IX, in the absence of anything elsewhere to the contrary, assures to the employer the right to refuse to assign a person to any one of his machines he does not consider that person competent to operate. He possibly may have to employ a referral somewhere else if he has an opening, but not to operate, for example, a multi-million dollar crane. His right to "make work assignments" is expressly reserved to him. This general meaning is emphasized by an express exception to it. In an annexed "Heavy Construction Agreement," Section IV, Work Rules (not quoted above), an employee covered by the agreement may not be changed to a machine that another employee so covered has been employed to operate unless the latter "has been discharged for just cause and the union has been notified of such discharge." Thus, one has apparent tenure rights in a machine one has previously been employed to operate.

According to union counsel at oral argument, if the employer wants the union to certify the competence of persons it refers, it can negotiate a collective bargaining agreement to that effect, and such agreements are common. Silence as to the subject in an otherwise comprehensive agreement thus denotes the contrary; the employer is free to refuse to assign anyone to perform particular duties as his employee, if not qualified. Unfortunately this, though not an improper response to questions from the bench, was still unsworn testimony by counsel as to industry custom, not included under Fed.R.Civ.P. 56(c) and (e). It may be regretted the IUOE did not provide the court below, as it readily could have done, with proper Rule 56 evidence to show that court—and us—just how the Hiring Hall provision functions with respect to the competence of the persons it refers for particular tasks. But it stands to reason no employer in his right mind would allow anyone to operate such an elaborate and costly device as a lofty crane unless he was satisfied the operator was competent. If the union that referred individuals would, or could, not certify as to this, the employer would have to maintain and use his own list of qualified persons. The supposititious employer in his right mind would not trust to any certification implied from the mere referral by the union on so vital a matter. Thus, though unfortunate, the absence of evidence as to actual practice does not frustrate our ability to decide this case on perusal of the thin record we have.

Ryan was warned by the court it had converted the motion to dismiss into one for summary judgment as to the second and third counts. What Ryan did not know himself about the relations between Raymond International and IUOE he could establish through the discovery means available under the Fed.R.Civ.P. Contending that the IUOE's obligation to certify stemmed from the collective bargaining agreement which the IUOE produced, he failed to point to any clause expressly so stating. If he contended that the obligation to certify stemmed from the Hiring Hall clause, by some kind of implication, he failed to conduct any discovery showing that it worked in any such way, or that the parties to the agreement had any such intention. If, as alleged in the sole affidavit

Ryan filed, the de facto operator of the crane, the oiler named Joe, was unqualified to operate it, this was an assignment of tasks for which, under the Management Rights clause Raymond International was responsible, not the IUOE. Ryan also offered nothing to show that the IUOE, if it certified anybody, certified oiler Joe as qualified to operate cranes, an unlikely supposition in view of the functions of oilers as stated in the collective bargaining agreement. Left in the dark as we are, it is the party with the burden of proof that must suffer. An essential element of Ryan's case, the union's agreement to stand by the competence of the referrals it made, and specifically of Joe to operate the crane, being missing, with no deposition, interrogatory answers, admissions, or affidavits to fill the gap, there was no genuine issue as to any material fact under Rule 56(c), and a summary judgment was properly entered for the IUOE under the two remaining counts.

### Conclusion

The motion to remand was properly denied as state law respecting all three counts was preempted. The first count was also properly dismissed on motion because it did not state a cause of action under any law. The second and third counts properly did not survive a summary judgment motion because they relied wholly on a collective bargaining agreement which, perused, did not contain anything to support the claim. Accordingly, the judgment below is affirmed.

AFFIRMED.