**John GOULET, Rhonda Goulet, et al., Plaintiffs,**

v.

**CARPENTERS DISTRICT COUNCIL OF BOSTON AND VICINITY, et al., Defendants.**

Civ. A. No. 91–11779–NG.

United States District Court, D. Massachusetts.

Oct. 28, 1994.

tion of others.

Kenneth M. Homsey, Law Office of Kenneth M. Homsey, Lawrence, MA, for plaintiffs.

Peter M. Durney, Cornell & Gollub, Boston, MA, Patricia J. DiGiovanni, MacCarthy, Pojani & Hurley, Worcester, MA, Paul W. Goodrich, James V. Marano, Jr., Morrison, Mahoney & Miller, Boston, MA, Christopher N. Souris, Feinberg, Charnas & Schwartz, Boston, MA, for Carpenters Dist. Council of Boston and Vicinity.

Peter M. Durney, Cornell & Gollub, Paul W. Goodrich, James V. Marano, Jr., Morrison, Mahoney & Miller, Christopher N. Souris, Feinberg, Charnas & Schwartz, Boston, MA, for Andris J. Silinis, Walter Chipman, Paul Green.

Sara Gens Birenbaum, Neville, Kelley, Neville, Bellotti & Barretto, Cambridge, MA, Kenneth A. Latronico, Casey, Latronico & Whitestone, Paul W. Goodrich, James V. Marano, Jr., Morrison, Mahoney & Miller, Boston, MA, for Turner Const. Co.

Lawrence E. Lafferty, Malden, MA, for Component Assembly Systems, Inc.

### DECISION

GERTNER, District Judge.

This case raises questions concerning the scope of federal preemption of state common law claims against a union. After being injured on the job, a union member brought state tort claims against his union, certain union officials, and the general contractor at his work site. The union and its officials removed the case to federal court and then moved for summary judgment on federal labor law grounds, among others. The general contractor moved to have the case dismissed for lack of federal subject matter jurisdiction. The plaintiffs moved for leave to amend the complaint to allege diversity jurisdiction. The union defendants' motion for summary judgment is **ALLOWED**. The general contractor's motion to dismiss is **ALLOWED** and the case is **REMANDED** to Middlesex Superior Court for further proceedings. Plaintiffs' motion is **DENIED**.[1]

---

1. While the union defendants' preemption claims were originally denied (Harrington, J.) at the

On or about March 5, 1990, John Goulet fell while installing sheetrock at a construction site in Charlestown, Massachusetts. Although Goulet was an employee of Component Assembly Systems, Inc. [hereinafter "CAS"] at the time of the accident, he did not sue CAS in this action. (CAS was the subject of an earlier Workers' Compensation Claim.)[2] In an effort to augment the recovery he received under Worker's Compensation, Goulet now sues the Carpenters District Council of Boston and Vicinity [hereinafter "District Council"], the officers of one of its local unions in their official capacities[3] [collectively "union defendants"], and the general contractor on the project, Turner Construction Company [hereinafter "Turner"].[4] He claims that the union defendants demanded that certain drywall lifts be removed from the job site for safety and/or work preservation reasons. Turner and CAS acceded to those demands, removed the lift and, Goulet contends, this accident resulted[5].

## I. FACTS

Certain facts are undisputed: Plaintiff John Goulet, a drywall technician, was an employee of CAS and a member of Local 218, United Brotherhood of Carpenters and Joiners of America, working at the Flagship Wharf Condominium project in Charlestown, Massachusetts. The District Council is a labor organization functioning as the central negotiating body of a number of local unions affiliated with the United Brotherhood of Carpenters and Joiners of America, including Local 218. Other defendants, Andris J. Silinis, Walter Chipman and Paul Green, were officers or representatives of Local 218. During the relevant period, the District Council was the collective bargaining representative for Local 218 members employed by CAS. Turner was the general contractor.

Goulet was installing sheetrock in a ceiling of the Flagship Wharf condominium. At some point at the job site, there had been a mechanical drywall lift designed to lift and hold heavy pieces of sheetrock for fastening to the ceiling. Prior to Goulet's accident, the lift device was removed by CAS.

The reason for CAS's removal of the lift is a matter of dispute. Plaintiff claims that CAS removed it at the behest of the union defendants. The union defendants, he claims, demanded the lift's removal because of a concern that its use would result in a loss of jobs (a work preservation rationale), and for safety reasons (that the workers were not trained in its use). The CAS Field Supervisor on the project, Robert Maloney, testified at deposition that he ordered the removal of the lifts for the sole reason that the use of such devices was not practicable given the conditions on the site[6]. (Maloney Deposition at pp. 40–52). For the purposes of this summary judgment motion, I am obliged to consider all inferences adverse to the moving parties. Accordingly, I will assume as true the plaintiffs' allegation that CAS removed the lifts in response to the union's demands.

Because the lift was removed, Goulet claimed that he had to lift a sheetrock slab weighing in excess of one hundred pounds while climbing a ladder, and while attempting to screw the sheetrock into the ceiling. He claims that his fall was a direct result of the

motion to dismiss stage, the Court ruled that it would reconsider this issue at the close of discovery. Discovery proceeded and the instant motions were filed.

2. Under Massachusetts Workers' Compensation Law, G.L. c. 152 § 23, 24, the employer is immune from negligence suits. Goulet has already recovered $89,658 from his employer's carrier, including a lump sum settlement of $61,181.

3. Local 218.

4. Turner also filed a cross-claim against the District Council and their officers and a third-party

complaint against CAS. The latter third party complaint was subsequently dismissed.

5. The case was originally brought in state court and removed by the District Council.

6. These devices, sheetrock lifts, are limited in their application and use. Gene Gaumond, CAS's foreman, had only used such a device in one job. (Gaumond Deposition, pp. 36–38.) Paul Green, the union steward and a sixteen year veteran, had never seen such a device in his years of experience. Nor had any of the drywall workers at the site to whom Green spoke. (Green Deposition at pp. 4, 5, 27).

misconduct of the union in securing the employer's removal of the sheetrock lift [7].

## II. UNION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. STANDARD

A motion for summary judgment will be granted when all relevant pleadings, viewed in the light most favorable to the non-moving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 7–8 (1st Cir.1990); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Where the failure of proof concerns the existence of an element essential to the party's case, there is no "genuine issue as to any material fact" within the meaning of the Rule, since such a complete failure "renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In the instant case, the central fact relevant to union defendants' motion for summary judgment—its status as a federally recognized labor organization—is undisputed. All other questions are legal ones—whether plaintiffs' state law claims are preempted as a matter of federal law.

### B. PREEMPTION STANDARD

■ The basis of federal preemption is the Supremacy Clause of the Constitution (Article VI), pursuant to which federal law supersedes or preempts state law, where Congress so intends. In the area of labor law, the Congress' intent could not be clearer: There is "not only a general intent to preempt the field but also ... [the] inescapable implication of exclusiveness." *Guss v. Utah Labor Relations Board*, 353 U.S. 1, 10, 77 S.Ct. 598, 603, 1 L.Ed.2d 601 (1957). Accordingly, federal law preempts state claims by members against their unions which are even "arguably" based on conduct that is protected by Section 7 or prohibited by Section 8 of the National Labor Relations Act (29 U.S.C. §§ 157, 158). *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959).

■ State claims by union members are also preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, where their resolution requires the interpretation of a collective bargaining agreement (*see, e.g. International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)) or where the conduct complained of is undertaken "pursuant to" a collective bargaining agreement. *United States Workers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

Where state law claims by union members have not been held preempted, the claims have involved conduct that was "merely a peripheral concern of the Labor Management Relations Act or touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [the Court] could not infer that Congress had deprived the States of the power to Act." *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 296–297, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977). Examples of such conduct include malicious libel, mass picketing and threats of violence. *Id.* at 297, 97 S.Ct. at 1061.

### C. UNION DEFENDANTS' PREEMPTION CLAIM

The Amended Complaint contains three counts against the union defendants. Counts I and II allege that Mr. Goulet was harmed by the negligence and "intentional and reckless" conduct of the union defendants, respectively. Count III alleges that Ms. Goulet lost the consortium and financial support of her husband on account of union defendants' negligent and intentional conduct. Because all of these claims arise out of the union's representational activities, and because none of them fall within the exception outlined above, they are preempted by federal labor law.

---

7. Rhonda Goulet, the plaintiff's wife, is also a party in this action, suing for loss of consortium.

**22**

■ Count I alleges that the union defendants were negligent in asking to have the drywall lift removed from Mr. Goulet's work site. This count is preempted because the union defendants' efforts in this area constituted protected collective bargaining activity under Section 7 of the NLRA.

■ It is irrelevant that the union's activities in this case—seeking the removal of the lift allegedly for safety or work preservation reasons—did not take place in the context of traditional collective bargaining for a new labor contract. Collective bargaining "is a continuing process", which does not end with the reaching of a formal agreement. *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It includes "day to day adjustments in the contract and other working rules, resolution of new problems not covered by existing agreements and the protection of employee rights already secured by contract." *Id.* Indeed, "work preservation" was expressly noted in *National Woodwork Manufacturers Assn' v. NLRB*, 386 U.S. 612, 643, 87 S.Ct. 1250, 1268, 18 L.Ed.2d 357 (1967) as part of a union's responsibility under the NLRA, and safety concerns were referred to in *NLRB v. Parr Lance Ambulance Service*, 723 F.2d 575 (7th Cir.1983).

■ Plaintiffs claim that union defendants' conduct is unprotected because it was prohibited by the terms of the then-current collective bargaining agreement. It is true that the agreement, Article XIX, section 13, notes that there "will be no . . . restrictions on the full use of . . . labor saving devices . . . provided . . . [they] comply with OSHA." That language, however, hardly takes the union defendants' conduct outside of the scope of federal regulation. The fact that this subject matter was included in the agreement does not foreclose subsequent union action on it, or joint employer-union action. At best, the

agreement could have provided CAS with a reason to refuse to bargain over the union's demand to have the lift removed during the life of the collective bargaining agreement.[8]

Count I is also preempted because its disposition requires an interpretation of the collective bargaining agreement. In *Hechler*, the plaintiff claimed that the union's failure to ascertain whether she had experience before being assigned certain work resulted in her injury. The Court found that only the company, not the union, had a common law duty of care to the employee. To the extent that the union assumed any obligations of care towards its members, they derived from the collective bargaining agreement. Thus, the threshold question, even in a claim of common law tort, required an examination of the duties accepted by the union and their scope. Since that determination required the interpretation of the collective bargaining agreement, a contract uniquely subject to federal interpretation, the state claims were preempted. 481 U.S. at 861–862, 107 S.Ct. at 2168.

In *Rawson*, the union was charged in Idaho state court with negligence in conducting safety inspections on behalf of employees. Even though the Idaho Supreme Court held that the union had a common law duty of care to its members, the U.S. Supreme Court held the claims preempted. The Court reasoned that even if Idaho common law did support a claim of negligence, that claim must have resulted from the union's status as a signatory to the collective bargaining agreement, since random strangers to the mine had no such duty. Accordingly, even a common law negligence claim would require interpreting the union's duties and rights under the collective bargaining agreement, and was thus preempted by federal law. 495 U.S. at 368–372, 110 S.Ct. at 1909–1911.[9]

8. In any event, the citation to this provision is not dispositive since the union also claimed worker safety as another basis for its action, an obligation that fits within its duties under the agreement.

9. In *Condon v. Local 2944, United States Steel Workers of America*, 683 F.2d 590 (1st Cir.1982), a case predating *Rawson* and *Hechler*, the First Circuit held that state tort and contract claims brought by a union member against his union

stemming from a work place accident were preempted. No matter how the plaintiff characterized the union's obligations—i.e., as independent of its representative obligations—the court found that the collective bargaining agreement could not be so "cavalierly" pushed aside. Without it, the union had no workplace safety or health obligations. It could not be "held liable for the negligent performance of a duty it assumed that arose inextricably, as here, from the

Likewise, in the instant case, the threshold determination involved the source and scope of the union's duty to Goulet under the collective bargaining agreement. The contract provides in connection with a section covering safety matters that "all power tools *or special equipment* shall be equipped with all necessary protective devices designed to protect the operator at all times." Article XVII, section 4 (emphasis added). Moreover, the contract authorizes stewards to deal with grievances on the job during working hours, (Article XVI, section 4), and that meetings "shall be held" between the union and the employer in an effort to resolve grievances. Article XXVI, section 1. *Any* right to influence work rules and any duties toward union members which the union defendants had at Goulet's work site had to have derived from its status under the collective bargaining agreement. *See Rawson*, 495 U.S. at 371–372, 110 S.Ct. at 1910–1911. Accordingly, Count I is preempted. *See also Sluder v. United Mine Workers*, 892 F.2d 549 (7th Cir.1989); *Ryan v. Int'l Union of Operating Engineers*, 794 F.2d 641 (11th Cir.1986).

■ Count II is also preempted because plaintiffs have failed to produce any evidence of the kind of outrageous conduct which States are permitted to regulate. This count is based on precisely the same allegations found in Count I, namely the union's alleged intervention to have the drywall lift removed from Mr. Goulet's work site. While certain kinds of intentional acts—sexual harassment, discrimination, assault—do fall outside the scope of preemption, the acts of the union defendants alleged by Goulet do not. Goulet claims that the union was motivated by "self interest" and that such motivation constitutes "intentional or reckless infliction of emotional distress." First, that the union may have acted in its "self interest" does not mean that it did not also act in the interest of the workers it represented. Arguably, the union had no "self" apart from its representative identity. Second, if Goulet is claiming that there was a unique animus against him such that the union did not represent his position well, his claim reduces (see Part D *infra*) to a duty of fair representation claim defined by federal law. Nothing Goulet has alleged even approaches the kind of outrageous personal attacks which have characterized non-preempted state law claims. *Compare Farmer, supra* (state claim for intentional infliction of emotional distress not preempted where it was based on campaign of personal abuse and harassment by union officials against member); *Anderson v. United Auto Workers*, 738 F.Supp. 441 (D.Kansas 1990) (union and employer's alleged collaboration to force handicapped worker to work at seven different jobs despite medical restriction to the contrary was sufficiently extreme and outrageous to state a claim under Kansas law and to avoid preemption).[10]

### D. THE DUTY OF FAIR REPRESENTATION

The obligation owed by the union to Goulet under the NLRA is the duty of fair representation. *See e.g., Steele v. Louisville and N.R.R.*, 323 U.S. 192, 204, 65 S.Ct. 226, 233, 89 L.Ed. 173 (1944). Put in the context of

---

safety and health provisions of a collective bargaining agreement." *Id.* at p. 594. *See, Bryant v. International Union of UMW of America*, 467 F.2d 1 (6th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1370, 35 L.Ed.2d 592 (1973); *House v. Mine Safety Appliances Co.*, 417 F.Supp. 939 (D.Idaho 1976). *See generally, Hines v. Anchor Motor Freight*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976).

The rationale for these decisions is important. In *House*, the court held that imposing such state law sanctions would weaken the duties of the employer at the expense of the union and its members who, unlike the employer, are unable to pass on the cost of insurance to the public. 417 F.Supp. at 946–47. In *Bryant*, the Court noted that imposing such liability on unions could well discourage them from seeking similar or more effective standards in future agreements. 467 F.2d at 5–6.

10. Even claims for intentional infliction of emotional distress are preempted where they "require interpretation" of the collective bargaining agreement. *Newberry v. Pacific Racing Ass'n*, (9th Cir.1988) 854 F.2d 1142, 1147. For example, the CBA may be relevant in determining whether the employer's acts constitute "outrageous conduct" for purposes of an intentional infliction claim. "Outrageousness" may depend on the relationship between the parties. As one court noted, "actions that the collective bargaining agreement permits might be deemed reasonable ..." *Miller v. AT & T Network Systems*, 850 F.2d 543, 550 (9th Cir.1988).

this case, Goulet must prove that when the union took steps to remove the lift for the reasons noted, they were not fairly representing his interest.

 The duty of fair representation is not the equivalent of the duty of reasonable care under the common law. It is a procedural right—the duty of good faith representation of the membership—and not a general duty of due care. Moreover, the law grants to the union a "wide range of reasonableness" and discretion in making the decisions "they believe will best serve the interests of the parties represented." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 342, 73 S.Ct. 681, 686, 688, 97 L.Ed. 1048 (1953). Even conduct amounting to negligence does not violate the duty of fair representation. *See e.g. Rawson*, 495 U.S. at 376, 110 S.Ct. at 1913; *MacKnight v. Leonard Morse Hospital*, 828 F.2d 48, 51 (1st Cir.1987). It is more than a "mere error in judgment" or "occasional instances[ ] of mistake." He must show that the union was guilty of far worse—variously described as "malfeasance," "dishonesty," "bad faith," or "discriminatory treatment," or acted in a "perfunctory" or "arbitrary fashion." *Sear v. Cadillac Automobile Co. of Boston*, 654 F.2d 4, 7 (1st Cir.1981); *Brough v. United Steelworkers of America, AFL–CIO*, 437 F.2d 748 (1st Cir. 1971); *DeArroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281 (1st Cir.1970) *cert. denied*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970). There is no such showing here.

The allegations of this complaint and the facts adduced in the affidavits are not addressed to the duty of fair representation and cannot be stretched to meet those standards.[11] Nor does the record support claims reaching the kind of outrageous conduct held to be outside of the area of preemption. Accordingly, Counts I and II are **DISMISSED, WITH PREJUDICE.**

Since Rhonda Goulet's claim for loss of consortium is based on precisely the same conduct as her husband's claim, subject to the same issues of interpretation, it is likewise preempted. Moreover, since Ms. Goulet's claim is derivative of that of her husband, Count III will not survive a dismissal of Counts I and II. *Marshall v. Ormet Corp.*, 736 F.Supp. 1462, 1472 (S.D.Ohio 1990). Count III is **DISMISSED, WITH PREJUDICE.**

## III. *TURNER'S MOTION TO DISMISS*

Counts IV and V of the Amended Complaint essentially parallel the charges in Counts I through III, and allege that Turner negligently and intentionally prevented Mr. Goulet from using the drywall lift described above. Count IV charges that Mr. Goulet suffered an injury as a result, while Count V alleges the loss of his consortium by his wife.

Defendant Turner has moved the Court to dismiss these counts and/or remand them to state court. Plaintiffs have opposed this motion and have moved for leave to amend the Complaint to allege diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs' motion is **DENIED** and Turner's request for remand is **ALLOWED.**

### A. *PENDENT JURISDICTION*

 With the dismissal of the claims against Union defendants, this case lacks a federal claim upon which to base jurisdiction. Nonetheless, plaintiffs contend that this court should retain pendent jurisdiction over the remaining claims. Such a retention of jurisdiction is discretionary, *Com. of Mass. v. V & M Management, Inc.*, 929 F.2d 830, 835 (1st Cir.1991), and I decline to do so in this case. This action was originally brought in state court, and was removed here by union defendants primarily to adjudicate their successful preemption claim.[12] Although plaintiffs claim to have spent resources in the

---

11. In any event, a claim charging a breach of the duty of fair representation must be brought within a 6 month statute of limitations. *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Plaintiffs' claims accrued at least one year prior to bringing this action.

12. As one court put it, defendants can "tow the ship into 'the federal harbor' " only to "sink" it once it gets there. *La Buhn v. Bulkmatic Transport Co.*, 644 F.Supp. 942, 948 (N.D.Ill.1986). Removal to federal court was meritorious as is defendant District Council's motion for summary judgment.

preparation of this case, their efforts have not been wasted, as they are no less prepared now for a state court trial as a federal one.

## B. *PLAINTIFFS' MOTION TO AMEND THE COMPLAINT*

 Plaintiffs move for leave to amend the complaint to allege diversity jurisdiction. Leave to amend should be freely given when justice so requires. Fed.R.Civ.P. 15(a). In the instant case, however, justice would dictate to the contrary. Plaintiffs never alleged diversity jurisdiction in their original complaint, and were apparently content to have this action tried in state court. It was transferred to this Court solely because of plaintiffs' clearly insupportable claims against union defendants.

 Moreover, to invoke the diversity jurisdiction of this Court, plaintiffs would be required, in their proposed amendments to the complaint, to allege sufficient facts for a finding of diversity between the parties. When diversity jurisdiction is challenged by the defendant, as Turner does here, the plaintiff has an obligation to provide evidence of the defendant's state of incorporation and principal place of business sufficient for a finding of diversity of citizenship. *Media Duplication Services, Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1236 (1st Cir.1991). This they have failed to do.[13]

## IV. *CONCLUSION*

For the foregoing reasons, the motion of defendants Carpenters District Council of Boston and Vicinity, Andris J. Silinis, Walter Chipman, and Paul Green for summary judgment is **ALLOWED.** The motion of defendant Turner Construction Co. to remand this action to Middlesex Superior Court is **AL-LOWED.** The motion of plaintiffs to amend the complaint is **DENIED.**

**SO ORDERED.**

---

**13.** The proposed amendment simply states that the Goulets were and are "citizens of a different state than the defendant, Turner Construction Company." Neither the amendment, nor the complaint as it now stands alleges Turner's citizenship. Neither have plaintiffs proffered any admissible evidence establishing such citizenship.