43 F.3d 587
 RESOLUTION TRUST CORP., Plaintiff,
v.
DUNMAR CORP. and Michael D. Jones, Defendants-Counterclaim Plaintiffs,
The First F.A., Defendant-Counterclaim Defendant,
Sherman Dantzler and Jack Shirek, Defendants,
and
The First F.A. of Orlando and Resolution Trust Corp.,
Counter-Defendants.
Michael D. JONES, Robert S. Guskiweicz, R.S. Futch, Jr.,
Plaintiffs-Appellants,
v.
RESOLUTION TRUST CORP., Defendant-Third Party Plaintiff-Appellee.
Philip DONLEVY, William Crawford, Robert Stone, Defendants,
v.
SEMINOLE FLYING AND SOARING, INC., and The First F.A. of
Orlando, Third Party Defendants.
RESOLUTION TRUST CORP., Plaintiff-Counter Defendant-Appellee,
v.
LAKE PICKETT, LTD., a Florida Limited Partnership; Michael
D. Jones, as general partner, d/b/a Lake Pickett, Ltd., a
Florida Limited Partnership; Michael D. Jones, individually
and as Trustee, Defendants - Counter - Plaintiffs - Appellants,
The First F.A. of Orlando, Defendant.
 No. 91-3924.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 26, 1995.
 
 Broad and Cassel, Brenda Lee London, Robert D. Gatton, Orlando, FL, for appellant.
 Giles, Hedrick & Robinson, P.A., E. Givens Goodspeed, Orlando, FL, Kirk K. Van Tine, Baker & Botts, Washington, DC, for Resolution Trust Corp.
 Manueal A. Palau, FDIC, Washington, DC, for amicus curiae FDIC.
 Appeal from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, Chief, Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 In this decision we assess the propriety of the district court's grant of summary judgment in favor of appellee Resolution Trust Corporation based upon the D'Oench, Duhme doctrine. For the reasons that follow, we affirm the judgment of the district court.
 
 II. FACTS
 
 2
 This case arises from the banking relationship of Michael D. Jones, Robert A. Guskiewicz, R.S. Futch, Jr., and Lake Pickett, Ltd. (collectively "Jones") with the financial institution of Freedom Savings & Loan Association ("Freedom"). Beginning in 1979, Jones obtained several personal and business loans from Freedom, two of which are at issue here. First, Jones obtained a loan secured by a mortgage on a residential real estate development known as Pickett Downs ("Lake Pickett"). Jones executed a two-year note and mortgage on Lake Pickett on July 11, 1984 for a total indebtedness of $1,600,000. With an unpaid balance of $1,117,172, the parties executed an extension agreement which delayed the loan's payoff until July 1987. Second, Jones obtained a loan for which the collateral consisted of property which Jones and his partners intended to develop as a "fly-in" residential community with an airstrip ("Airport Property"). The parties executed a two-year note and mortgage on the Airport Property on June 5, 1986 in the amount of $7,950,000.
 
 
 3
 At the time of the alleged incidents which spawned this litigation, Jones still owed Freedom substantial sums on both obligations. Jones owed a total of more than $8,000,000, with approximately $850,000 due on the Lake Pickett obligation and over $7,400,000 due on the Airport Property loan. Both loans were evidenced by a standard note and mortgage. Pursuant to both loan agreements, Jones could not effectuate an assumption of the obligations without the prior consent of Freedom.
 
 
 4
 On July 23, 1987, the Federal Home Loan Bank Board ("FHLBB") declared Freedom insolvent and appointed the Federal Savings & Loan Insurance Corporation ("FSLIC") as the institution's Receiver. The FHLBB chartered a new federal savings and loan institution with the same name ("New Freedom") to which the FSLIC transferred assets of Freedom, including the loans at issue, pursuant to an acquisition agreement.
 
 
 5
 During the operation of New Freedom, the incidents at issue in this case occurred. With respect to each of the properties, negotiations occurred between and among Jones, potential buyers, and New Freedom officials in an effort to restructure the loans. In each case, Jones had reached an agreement with buyers to purchase his land, the collateral. With respect to the Airport Property, interested buyers submitted a written proposal of the deal to New Freedom. In both cases, the arrangement between Jones and the buyers required assumption of the existing loans; thus, the transactions required New Freedom's approval.
 
 
 6
 Jones asserts that during such negotiations, New Freedom officials made oral representations that the bank would lend additional monies, extend the time for payment, and permit assumption by the buyers. Jones asserts that New Freedom intentionally and/or negligently killed Jones' arrangement with the buyers, accordingly damaging Jones due to the failure of the deals to be consummated.
 
 III. PROCEEDINGS BELOW
 
 7
 After the foregoing negotiations surrounding the Airport Property broke down, Jones instituted an action in state court against New Freedom and various officers, raising a number of tort theories. New Freedom responded by counterclaiming to foreclose the Airport Property and by instituting foreclosure proceedings on the Lake Pickett Property. Prior to resolution of these cases, on February 7, 1989, FHLBB declared New Freedom insolvent and appointed FSLIC as Conservator. Subsequently, on March 8, 1989, FSLIC removed these cases to federal court. Pursuant to the passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101-73, 103 Stat. 183, Sec. 1821(d)(2)(A)(i), (FIRREA) the Resolution Trust Corporation ("RTC") was created, replacing the dissolved FHLBB and FSLIC. The RTC as Receiver for New Freedom occupies New Freedom's place with respect to Jones' claims against the failed institution. The RTC in its corporate capacity, as purchaser of New Freedom's assets, undertakes the claims against Jones on the notes.
 
 
 8
 Following discovery, the RTC moved for summary judgment. After Jones' response and full briefing, the district court granted summary judgment in favor of RTC. On appeal, a panel of this court affirmed in part and reversed in part. Resolution Trust Corp. v. Jones, 7 F.3d 1006 (11th Cir.1993). RTC's petition for en banc rehearing was granted, thus vacating the panel opinion. 20 F.3d 397 (11th Cir.1994).
 
 
 9
 RTC's motion for summary judgment argued that all of Jones' claims were based on oral agreements or representations and thus were barred by D'Oench. Jones filed a brief and response in opposition to summary judgment. See Memorandum of Law Opposing Motion for Summary Judgment or, Alternatively, Motion for Partial Summary Judgment (hereinafter "Memorandum of Law Opposing Motion for Summary Judgment") R-2-68-1. The first argument Jones raised to the district court, entitled "Dual Capacity," has not been pursued on appeal and thus is deemed abandoned. The third argument Jones raised, "Dominion and Control," is clearly without merit and warrants no further discussion.[1] Thus, we address Jones' second argument, namely that D'Oench does not apply to bar tort claims involving oral agreements that additional monies could be loaned, that extensions could be granted, and that the bank would permit assumption of the mortgage. Jones' brief to the district court argued:
 
 
 10
 Although the affirmative defenses allege oral agreements that additional monies could be loaned, that extensions could be granted and that New Freedom would be willing to allow an assumption of the loan to a qualified buyer, these agreements do not tend to diminish the rights of the corporation, RTC.
 
 
 11
 Memorandum of Law Opposing Motion for Summary Judgment, R-2-68-16. We further address a question implicit in this argument: i.e., that Jones' claims somehow do not diminish the rights of RTC.[2] For the reasons set forth below, we conclude that Jones' claims are barred.
 
 IV. STANDARD OF REVIEW
 
 12
 In assessing a grant of summary judgment, this court conducts a de novo review, applying "the same legal standards 'that should have been applied by the district court.' " Brown v. Crawford, 906 F.2d 667, 669 (11th Cir.) (quoting Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1513 (11th Cir.1989)), cert. denied, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." Ryan v. Int'l Union of Operating Eng'rs, Local 675, 794 F.2d 641, 643 (11th Cir.1986); see also Bennett v. Parker, 898 F.2d 1530, 1532 n. 1 (11th Cir.), cert. denied, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." Golden Oil Co., Inc. v. Exxon Co., U.S.A., 543 F.2d 548, 551 & n. 3 (5th Cir.1976).[3] This effectuates the purpose of summary judgment which " 'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Wouters v. Martin County, 9 F.3d 924, 928 (11th Cir.) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)), cert. denied, --- U.S. ----, 115 S.Ct. 65, 130 L.Ed.2d 21 (1994). Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists. Franz Chem. Corp. v. Phila. Quartz Co., 594 F.2d 146, 150 (5th Cir.1979).
 
 V. DISCUSSION
 
 13
 Our analysis begins with an examination of the D'Oench doctrine's origins and with the leading case itself, D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In that case, a bank, which subsequently failed, tried to collect a debt that was evidenced by a writing. The defendant asserted that it had made a secret side agreement with the bank, in which the bank promised not to collect the debt. The Supreme Court held that such a "secret agreement" outside the documents contained in the bank's records would not operate as a defense against suit by the FDIC on a note acquired from a failed bank. Id. at 459, 62 S.Ct. at 680. The Court based its holding on provisions of the Federal Reserve Act which "reveal[ed] a federal policy to protect [the FDIC] ... and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] ... insures or to which it makes loans." Id. at 457, 62 S.Ct. at 679. Accordingly, the Court articulated an inquiry to estop certain borrower defenses:
 
 
 14
 The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.
 
 
 15
 Id. at 460, 62 S.Ct. at 681.
 
 
 16
 Congress has embodied the D'Oench estoppel doctrine in a statute which was initially codified by the Federal Deposit Insurance Act of 1950, Sec. 2(e), 64 Stat. 889, and as amended, 12 U.S.C. Sec. 1823(e), provides as follows:
 
 
 17
 No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
 
 
 18
 (1) is in writing,
 
 
 19
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 
 
 20
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 
 
 21
 12 U.S.C. Sec. 1823(e).
 
 
 22
 Since the passage of FIRREA, this provision also applies to the RTC. See 12 U.S.C. Sec. 1441a(b)(4). Prior to FIRREA's passage, courts had determined that the purposes underlying the D'Oench doctrine and Sec. 1823(e) were the same, thus permitting utilization of the same analysis under each. See Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1515 (11th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); Twin Const., Inc. v. Boca Raton, Inc., 925 F.2d 378, 382 & n. 2 (11th Cir.1991); Vernon v. Resolution Trust Corp., 907 F.2d 1101, 1105 (11th Cir.1990). Accordingly, cases interpreting the common law doctrine as well as its statutory counterpart are applicable precedent. Baumann, 934 F.2d at 1515.
 
 
 23
 Re-examination and elaboration of the D'Oench doctrine have expanded it far "beyond the factual background of the D'Oench case itself, so that it 'now applies in virtually all cases where a federal depository institution regulatory agency is confronted with an agreement not documented in the institution's records.' " OPS Shopping Center, Inc. v. FDIC, 992 F.2d 306, 308 (11th Cir.1993) (quoting Baumann, 934 F.2d at 1510). This circuit's D'Oench rule, as articulated in Baumann and reiterated in OPS provides:
 
 
 24
 In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.
 
 
 25
 OPS, 992 F.2d at 308 (quoting Baumann, 934 F.2d at 1515).
 
 
 26
 Memorialization of agreements best serves the dual policies underlying the D'Oench doctrine which the Supreme Court set forth in Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). First, application of the D'Oench doctrine permits federal and state bank examiners to rely upon the bank's records of regular banking transactions in evaluating the institution's fiscal soundness. Id. at 91, 108 S.Ct. at 401. Particularly where the FDIC is deciding whether to liquidate a failed bank, determinations must be made " 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services.' " Id. (quoting Gunter v. Hutcheson, 674 F.2d 862, 865 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982)). Second, requiring that agreements be executed and become regular banking records is designed to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." Langley, 484 U.S. at 91, 108 S.Ct. at 401. Finally, where one lends oneself to a scheme or arrangement whereby the banking authority is likely to be misled, that scheme or arrangement should not be the basis for a claim against the banking authority. Id. at 92-93, 108 S.Ct. at 402.
 
 
 27
 A. Applicability Generally of the D'Oench bar to Jones' Tort Claims
 
 
 28
 We turn first to Jones' argument that the D'Oench doctrine does not bar his tort claims--claims which allege oral agreements that additional monies could be loaned, that extensions could be granted, and that the bank would permit assumption of the mortgage by a qualified buyer. We reject this argument. The law is well-established that D'Oench bars tort claims based upon such oral agreements. The Supreme Court in Langley applied section 1823(e) to bar a claim based upon an oral misrepresentation, notwithstanding the fact that the claim sounded in tort. The alleged fraudulent misrepresentation occurred during discussions surrounding an ordinary banking transaction which culminated in a land purchase, a note and a mortgage. 484 U.S. at 89, 108 S.Ct. at 400. Similarly, in this case, the misconduct of which Jones complains involves negotiations and discussions concerning the bank's approval of persons or entities to assume part of Jones' mortgage indebtedness. The background of Jones' claim is that Jones wanted to sell the property to escape the burden of the debt, that Jones had potential purchasers who were willing to assume Jones' indebtedness, and that certain concessions by the bank were needed, including in particular the bank's approval of the assumption by the potential purchasers. As in Langley, the instant tort claims are based upon oral representations which Jones asserts led him to believe New Freedom would permit assumption of his mortgage indebtedness. Therefore, where, as here, a tort claim arises in the course of regular banking transactions, such that exclusion of the alleged "secret agreement" accords with the underlying policies of D'Oench set forth in Langley, that claim is barred.
 
 
 29
 Like Langley, this circuit's decisions recognize that tort claims arising from oral side agreements are barred. In FDIC v. Govaert (In re Geri Zahn, Inc.), 25 F.3d 1539 (11th Cir.1994), this court held that D'Oench barred claims of fraud, wrongful dishonor, and intentional interference with a business relationship where the alleged misrepresentations implicated an oral side agreement reached during the loan negotiations which contradicted the express terms of the loan documentation. The court rejected the position that a tort claim could be maintained where the written loan terms allegedly did not reflect the parties' true agreement with respect to the date of the note and the time of funding. Id. at 1544. In concluding that the tort claims at issue fell within the core of the D'Oench bar, the court reasoned that such oral agreements were "part and parcel" of the loan negotiations, and as such would normally be reflected in the records of regular banking transactions. Id. Similarly, in this case, had the bank approved the assumptions Jones requested, that information would have been reflected in the minutes of the board of directors' meeting and would have been embodied in a written agreement.
 
 
 30
 Also relevant is this circuit's holding in OPS Shopping Ctr., Inc. v. FDIC, 992 F.2d 306 (11th Cir.1993). In OPS, a bank refused to pay on a letter of credit not reflected in the bank's files, records, or board of directors' minutes; the plaintiff sued for nonpayment. In deciding that D'Oench barred plaintiff's claims against the FDIC, the court extensively discussed this circuit's prior decision in Vernon v. FDIC, 981 F.2d 1230 (11th Cir.1993),[4] (Vernon II ) particularly the scope of free-standing torts which Vernon II described. First, the OPS court set forth a critical proposition: " 'a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.' " OPS, 992 F.2d at 308 (emphasis added) (quoting Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1515, cert. denied, --- U.S. ----, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992)). Second, the OPS court rejected the assertion that D'Oench applied only to transactions relating to a specific asset of the bank. Although the court acknowledged that some language in Vernon II would seem to suggest that the D'Oench doctrine would bar only tort claims related to a specific asset of the bank, the court promptly refuted that contention by distinguishing the free standing tort claims at issue in Vernon II from the claims at issue in OPS:
 
 
 31
 [T]he claims involved in this case relate directly to ordinary banking transactions, i.e., the rights and obligations relating to the issuance of a letter of credit by the bank. Banking examiners who inspect and evaluate the bank records reasonably expect the records of regular banking transactions to reflect all of the rights and liabilities of the bank regarding such regular banking transactions.
 
 
 32
 Id. at 310 (emphasis in original or added).
 
 
 33
 Thus, the court distinguished between typical claims like employment discrimination and automobile accidents which would be freestanding torts not barred by D'Oench, and those relating to "ordinary banking transactions." Id. As to the latter, the court found that Vernon II concept of freestanding tort claims did not encompass claims which relate directly to regular banking transactions, memorialization of which should be reflected in regular banking records. Id. at 311. Thus, OPS holds that D'Oench bars a claim or defense not found in the bank's records that involves regular banking transactions.
 
 
 34
 It is readily apparent from the case law that Jones' claims must fail. Jones' claims--that additional monies could be loaned, that extensions could be granted, and that assumption would be permitted--arise out of alleged oral agreements or representations; none is memorialized in any written document; yet the nature of each alleged oral agreement or representation relates to regular banking transactions and should have been documented in the bank records. For example reduced to its basic elements, Jones' claim regarding the Airport Property is a claim on the bank's oral promise to permit assumption of the loan by the potential purchasers Jones had located. Such an obligation, unlike one arising from an automobile accident, is one which certainly could have, and should have, been documented in the bank's records of regular banking transactions. Jones' failure to acquire some written evidence of this oral promise is proof that he lent himself to an arrangement which was likely to mislead.
 
 
 35
 Other circuits have also squarely rejected the position which Jones advocates and have applied D'Oench to bar tort claims arising from oral agreements. As articulated by the First Circuit:
 
 
 36
 This conclusion is not altered by the fact that some of the claims asserted by Timberland sound in tort. The district court correctly held that D'Oench bars defenses and affirmative claims whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged secret agreement.... To allow the plaintiff to assert tort claims based on the oral agreement would circumvent the very policy behind D'Oench, and therefore, D'Oench is generally said to apply to tort claims. See Beighley [v. Federal Deposit Insurance Corp.], 868 F.2d at 784 [ (5th Cir.1989) ]. Although not decided under D'Oench, the Supreme Court's decision in Langley v. F.D.I.C. supports this conclusion by holding that Sec. 1823(e) bars fraud claims that are premised upon an oral agreement. 484 U.S. 86, 93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987). We therefore conclude that D'Oench applies with equal force to tort claims arising out of secret agreements.
 
 
 37
 Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 50 (1st Cir.1991) (footnotes omitted). The tort claims asserted in Timberland (negligent misrepresentation, deceit, and breach of fiduciary duty) arose out of negotiations concerning additional loans, a context analogous to the claims in this case.
 
 
 38
 Several other courts have held that D'Oench bars tort claims in similar situations. See Robinowitz v. Gibraltar Sav., 23 F.3d 951 (5th Cir.1994) (D'Oench barred tort claims of breach of fiduciary duty, fraud, and misrepresentation where claims arose out of alleged oral misrepresentations arising from settlement agreement of joint venture); FDIC v. Bathgate, 27 F.3d 850 (3d Cir.1994) (D'Oench barred defenses of breach of agreement, breach of duty of good faith, wrongful acceleration, trade libel/slander of credit, slander of title, and impairment of collateral where claims were predicated on side agreement during negotiations with bank to extend closing date set forth in letter); FDIC v. Hulsey, 22 F.3d 1472 (10th Cir.1994) (D'Oench barred counterclaims of fraud/intentional misrepresentation, constructive fraud/breach of fiduciary duty, and negligence to extent based on oral agreements surrounding loan transfer agreement prior to transfer to FDIC); Lemaire v. FDIC, 20 F.3d 654 (5th Cir.1994) (D'Oench barred claims predicated on bank officer's oral promise to make loan); FDIC v. Marine Midland Realty Credit Corp., 17 F.3d 715 (4th Cir.1994) (noting in dicta that D'Oench bars claims or defenses based on unwritten agreements); Hanson v. FDIC, 13 F.3d 1247 (8th Cir.1994) (tort actions based upon oral side agreements are barred); McCullough v. FDIC, 987 F.2d 870 (1st Cir.1993) (D'Oench barred claims that bank liable for failing to disclose order requiring removal of hazardous waste from property); Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571 (10th Cir.1993) (D'Oench barred tort claim arising out of misrepresentations made during contract negotiations); Bruneau v. FDIC, 981 F.2d 175 (5th Cir.) (barring claims for breach of fiduciary duty and "concerted tort action" where claims predicated on oral representations that depositor's accounts were fully insured), cert. denied, --- U.S. ----, 113 S.Ct. 2413, 124 L.Ed.2d 636 (1993); FDIC v. Payne, 973 F.2d 403 (5th Cir.1993) (D'Oench barred claim of fraudulent inducement based on bank's oral misrepresentation about financial condition of person Payne agreed to guarantee); In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332 (1st Cir.1992) (tort claims based on illegal kick back scheme barred by D'Oench ); Oliver v. Resolution Trust Corp., 955 F.2d 583 (8th Cir.1992) (D'Oench barred tort claim for breach of fiduciary duty based on violation of oral side agreements regarding loan); FDIC v. Kasal, 913 F.2d 487, 493 (8th Cir.) (dismissing counterclaims of breach of contract, negligence, promissory estoppel, and misrepresentations because based upon a secret unwritten side agreement), cert. denied, 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991); Mainland Sav. Ass'n v. Riverfront Assocs., Ltd., 872 F.2d 955 (10th Cir.) (defenses based upon side agreement to fund a second loan not evidenced in banks barred), cert. denied, 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989); Beighley v. FDIC, 868 F.2d 776 (5th Cir.1989) (D'Oench barred breach of fiduciary duty claim arising out of bank's alleged oral agreement to finance the purchase of collateral property).
 
 B. Jones' Second Issue
 
 39
 We now turn to the second issue--whether Jones' claims can escape the D'Oench bar because they somehow do not diminish the rights of RTC. Jones makes several apparently related arguments: that his claims do not directly challenge the validity or enforceability of RTC's note, that his claims do not tend to diminish the rights of the corporation (RTC), and that the D'Oench doctrine protects the RTC only in its corporate capacity and not in its receivership capacity. Although it is difficult to ascertain precisely what Jones' argument means, we address the two possible interpretations which we can divine. First, Jones' may mean to suggest that although the D'Oench doctrine bars his claims against the note itself, which RTC assumed in its corporate capacity, the D'Oench doctrine does not apply to protect the RTC in its receivership capacity, i.e., in its capacity standing in the shoes of the failed bank. However, every circuit which has addressed this issue, including the Eleventh Circuit, has held that the D'Oench doctrine protects the RTC not only in its corporate capacity but also in its receivership capacity.[5] Thus we reject this interpretation of Jones' argument as being wholly without merit.
 
 
 40
 The other possible interpretation of Jones' argument is as follows: while conceding that RTC may collect on the note and foreclose on the mortgage, without the interference of Jones' defenses, Jones' may be arguing that he can, nevertheless, sue on his claims and impose liability on RTC which could then be set-off against the RTC's recovery on the note.[6]
 
 
 41
 However, the case law does not impose this narrow limitation on the application of the D'Oench doctrine. Were it otherwise, an obligor could accomplish indirectly what D'Oench expressly prohibits, enforcement of an unwritten agreement. In declining to reach a related issue, this court in FDIC v. Lattimore Land Corp., 656 F.2d 139 (5th Cir.1981) nevertheless noted:
 
 
 42
 [A]n assertion of this defense against the FDIC seems merely to convert a claim of breach into a claim of fraud. If an obligor may successfully void a note and recoup damages against the FDIC based on a claim of fraudulent inducement from an unwritten agreement, he will have made an end run around Sec. 1823(e) by asserting as fraudulent the same unwritten agreement of which a breach resulting in damages may not under Sec. 1823(e) be asserted against the FDIC.
 
 
 43
 Id. at 146 n. 13. Indeed, in OPS, this court squarely rejected the contention that D'Oench applies only to bar claims which are related to specific assets, like a note. OPS Shopping Ctr., Inc. v. FDIC, 992 F.2d 306, 309-10 (11th Cir.1993).[7] See Timberland Design, Inc. v. First Service Bank for Savings, 932 F.2d 46, 49-50 (1st Cir.1991) (D'Oench protects the FDIC from Timberland's affirmative claims which are based upon an alleged oral agreement to lend money in the future); Hall v. FDIC, 920 F.2d 334, 339 (6th Cir.) (D'Oench doctrine held to protect the FDIC even where the FDIC does not have "an interest in an asset"), cert. denied, 501 U.S. 1231, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991); Bowen v. FDIC, 915 F.2d 1013, 1016 (5th Cir.1990) (applying D'Oench and holding that the "agreement need not implicate a specific obligation, such as a note or other asset held by the FDIC"); Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A., 894 F.2d 750, 753 (5th Cir.) (rejecting argument that D'Oench "bars only claims or defenses based upon unrecorded side agreements that defeat the FDIC's interest in a specific asset acquired from a bank"), cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).
 
 
 44
 Fueling these decisions is the recognition that to distinguish between affirmative claims and defenses for purposes of D'Oench would reduce the D'Oench doctrine's protection to a nullity. Timberland Design v. First Serv. Bank for Sav., 932 F.2d 46, 49 (1st Cir.1991). As articulated by the Sixth Circuit in Hall v. FDIC, 920 F.2d 334 (6th Cir.1990), cert. denied, 501 U.S. 1231, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991):
 
 
 45
 "To allow a claim against the FDIC asserting the very grounds that could not be used as a defense to a claim by the FDIC is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost."
 
 
 46
 Id. at 340 (quoting Beighley v. FDIC, 676 F.Supp. 130, 132 (N.D.Tex.1987), aff'd, 868 F.2d 776 (1989)).
 
 
 47
 Recognizing the apparent anomaly in permitting such affirmative claims, a number of decisions have held that the D'Oench doctrine bars set-off claims. See Levy v. FDIC, 7 F.3d 1054, 1057 (1st Cir.1993) (breach of warranty claims of set-off based upon purchase and sale agreement did not preclude summary judgment on note and guarantee); FDIC v. Hamilton, 939 F.2d 1225, 1227, 1229 (5th Cir.) (set-off barred by D'Oench where based upon alleged breach of oral agreement to timely advance funds to line of credit); FSLIC v. Griffin, 935 F.2d 691, 699 (5th Cir.1991), (D'Oench barred set-off claims based upon alleged oral agreements to form a partnership, to fund subsequent loans, and to bid on the property at a specified price) cert. denied, --- U.S. ----, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992); Resolution Trust Corp. v. Murray, 935 F.2d 89, 94-95 (5th Cir.1991) (claim that failed institution reneged on pledge to provide further financing barred under D'Oench ); FDIC v. State Bank of Virden, 893 F.2d 139, 143-44 (7th Cir.1990) (misrepresentations concerning solvency and priority of loan in participation agreement in unrelated transaction asserted as set-off barred by D'Oench ); FDIC v. Texarkana Nat'l Bank, 874 F.2d 264, 267 (5th Cir.1989) (fraudulent representations by bank officers barred as oral agreement under D'Oench ), as amended on denial of reh'g, cert. denied, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); Mainland Sav. Ass'n v. Riverfront Assocs., Ltd., 872 F.2d 955, 956 (10th Cir.) (claims for set-off based upon intentional fraud, gross negligence, reckless conduct, breach of an agreement to fund, and breach of implied covenant of contractual fair dealing arising from alleged oral agreement to fund a second loan barred by D'Oench ), cert. denied, 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989); Beighley v. FDIC, 868 F.2d 776, 784 (5th Cir.1989) (D'Oench barred set-off claims based upon breach of alleged agreement to fund additional loans). Underlying each of these decisions is the recognition that the D'Oench doctrine bars claims, including claims for set-off, premised upon oral agreements. In each instance, a determination must be made whether the particular set-off claim is based upon an oral "agreement" of the type which would normally be reflected in the records of regular banking transactions. This interpretation of "agreement" was elucidated by the Supreme Court in Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987):
 
 
 48
 Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in D'Oench, Duhme ) or of the truthfulness of a warranted fact.
 
 
 49
 Langley, 484 U.S. at 93, 108 S.Ct. at 402. In the instant case, Jones' claims are premised upon agreements that additional monies could be loaned, that extensions could be granted, and that the bank would permit assumption of the mortgage by a qualified buyer. Such agreements clearly constitute unwritten and unrecorded conditions upon repayment of the obligations and thus are precluded by the logic of Langley and the theoretical underpinnings of D'Oench itself. Thus, these claims fall squarely within the D'Oench bar, whether asserted as defenses to payment or as claims in the nature of set-off.
 
 
 50
 C. Other Arguments Not Fairly Presented to the District Court
 
 
 51
 Jones' brief to the en banc court raises for the first time several arguments which were not fairly presented to the district court: e.g., (1) disclosure of confidential information; (2) an argument that a particular oral representation constituted a tortious interference with business relations that was sufficiently independent of the note and mortgage or the restructuring negotiations to escape the D'Oench bar; and (3) a breach of fiduciary duty. Well-settled precedent provides that arguments not raised at the district court level will generally not be considered on appeal. See Baumann v. Savers Fed. Sav. & Loan Assoc., 934 F.2d 1506, 1512 (11th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); Caban-Wheeler v. Elsea, 904 F.2d 1549, 1557 (11th Cir.1990). " 'Judicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below.' " Stewart v. Dep't of Health & Human Servs., 26 F.3d 115 (11th Cir.1994) (quoting Bliss v. Equitable Life Assur. Soc. of U.S., 620 F.2d 65, 70 (5th Cir.1980)). Where the record supports a legal argument raised for the first time, an appellate court may exercise its discretion to address the issue where refusal to consider it would result in a miscarriage of justice. FDIC v. 232, Inc., 920 F.2d 815, 818 (11th Cir.1991). However, it is not at all clear that RTC would not have adduced additional evidence if these theories had been presented by Jones in opposition to summary judgment. In any event, Jones has not demonstrated that refusal to address these issues will result in a miscarriage of justice. Nor does refusal to consider these arguments implicate any of the other exceptional circumstances outlined by this court in Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360-61 (11th Cir.1984).
 
 
 52
 First, Jones' en banc brief argues that D'Oench should not apply because New Freedom disclosed confidential information to Jones' potential buyers, in apparent violation of Fla.Stat. Sec. 655.059. Jones argues that such a claim is not based upon any oral representation or agreement and is completely independent of the note and mortgage. We decline to address this argument, and thus expressly leave open for future resolution the issue of the applicability of the D'Oench bar to such a claim. Jones did include in his pleadings a count alleging disclosure of "confidential information" in vague terms. However, this case was not dismissed on the pleadings, but was dismissed upon the district court's grant of RTC's motion for summary judgment. In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." Ryan v. Int'l Union of Operating Eng'rs, Local 675, 794 F.2d 641, 643 (11th Cir.1986). There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir.1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir.1994) (citing Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir.1986)), cert. denied, --- U.S. ----, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994). RTC clearly asserted in its motion for summary judgment that Jones' claims were based upon oral side agreements which were barred by D'Oench. In response thereto, Jones filed a Memorandum of Law Opposing Motion for Summary Judgment in which Jones himself referred to his claims as being based upon oral agreements. Nowhere in Jones' brief did Jones suggest that the D'Oench bar would not apply because of the peculiar nature of Jones' tort claim. Nowhere in the brief did Jones mention that one aspect of his claim related to the disclosure of confidential information, and thus was not based upon any oral agreement and was not related in any way to the mortgage or note. Indeed, the only indication in the pleadings themselves as to Jones' injury was the injury resulting from the failure of Jones' proposed arrangements with potential buyers, which, of course, in turn depended upon New Freedom's consent to the assumption of Jones' loans. Had Jones fairly presented to the district court an argument that D'Oench did not apply to bar this discrete aspect of his amorphous set of claims, then both RTC and the district court could have addressed it.
 
 
 53
 We decline to exercise our discretion to entertain this argument which was not fairly presented to the district court. Had Jones fairly raised the issue, RTC would have been on notice to make arguments and adduce evidence in response. For example, RTC could have adduced evidence either that it did not disclose confidential information, or that the buyers whom Jones sent to New Freedom for the purpose of discussing the possible restructuring of the loan were in fact authorized to receive any information relevant thereto. Moreover, even at this late date, it is not clear what damage or injury Jones asserts as a result of the alleged improper disclosure of confidential information. As mentioned above, the only injury suggested in Jones' pleadings does not seem relevant. Under all the circumstances, we do not believe that the interests of justice indicate that Jones should be allowed at this late date to raise such a claim.
 
 
 54
 The second argument which Jones raises for the first time is one of the several aspects encompassed in Jones' amorphous claim of tortious interference. Jones did include in his statement of the facts relating to the Lake Pickett loan (the smaller of the two loans) that New Freedom officials made a gratuitous offer to Jones' potential buyers to sell the property to them at a discounted price after the bank's foreclosure against Jones. Jones now suggests for the first time that such an oral representation is sufficiently independent of the note and mortgage or the restructuring negotiations to constitute a free-standing tort, and thus escape the D'Oench bar. Jones' claim is amorphous and is rather vaguely stated even at this late stage (e.g., Jones does not even indicate whether this particular claim is in the nature of a defamation claim). We decline to entertain the argument because it was not fairly presented to the district court. This argument was not made in Jones' brief to the district court which purported to present all of Jones' reasons for escaping summary judgment on the D'Oench issue.
 
 
 55
 Finally, Jones asserts on appeal that certain aspects of his breach of fiduciary duty claim should escape the D'Oench bar. Again, we decline to entertain an argument which was not fairly presented to the district court. Moreover, even at this late stage, Jones' argument is imprecise. Jones' claim of breach of fiduciary duty seems to be based upon his alleged long-standing relationship with the bank, their financial advice to him related to projects on which the bank extended loans, and the mere fact that Jones reposed confidence in the bank. Such claims appear to be based on the oral representations alleged therein; but the alleged additional duties do not appear in the bank records; and, if successful, Jones' effort would impose upon the bank a duty greater than the duty evidenced by the written documents. It is not readily apparent how such claims could fall outside the D'Oench bar. However, we need not decide the issue because the argument was not fairly presented to the district court.
 
 VI. CONCLUSION
 
 56
 Based upon the foregoing reasons, we readily conclude that the district court committed no error in granting summary judgment against Jones based on the D'Oench doctrine. Accordingly, the judgment of the district court is
 
 
 57
 AFFIRMED.
 
 
 58
 BARKETT, Circuit Judge, concurring in part and dissenting in part:
 
 
 59
 I dissent to the extent that the majority declines to address Jones' tort claims of intentional interference with an advantageous business relationship and disclosure of confidential information.
 
 
 60
 In my judgment, Jones sufficiently asserted these claims, which do not challenge the validity of his obligation to the bank, and therefore are not D'Oench barred. Jones presented the claims in his pleadings; he argued them in his Memorandum of Law Opposing Motion for Summary Judgment ("Memorandum"), to which he attached depositions providing sufficient evidence to support his claims; and he referred to them again in his briefs before this Court.
 
 
 61
 In his Memorandum, Jones alleged, among other things, that bank officers approached potential buyers of his Lake Pickett property and offered to discount the note on the property, provided that Jones received nothing from the deal. Jones offered depositions by the potential buyers, Terry Hagen and Steven Chitwood, to support this claim of interference with an advantageous business relationship. He further alleged that the bank officers deliberately disclosed confidential information about his finances to sabotage his deal in order to benefit a rival bank in which the officers had an interest. I do not find this to be a vague or meritless claim.
 
 
 62
 In my judgment, RTC was on notice and should have made arguments in response. Although Jones could have better articulated and amplified his tort claims, I find that he fairly presented evidence to the district court to support them, and that he provided sufficient notice to RTC such that it should have adduced evidence in response. Jones did not merely rely on his pleadings, but, in my opinion, offered proof that genuine issues of material fact exist. Accordingly, I believe that the district court should have denied summary judgment on the aforementioned claims.
 
 
 
 [1]
 With respect to this dominion and control argument, the district court noted that the wrongs complained of by Jones were not alleged to have been committed by the RTC itself but rather by the employees of New Freedom who were subject to the oversight and control of the federal regulatory authority. The panel opinion, in rejecting this dominion and control argument, noted that under 12 U.S.C. Sec. 1821(n)(6)(A) ("A bridge bank is not an agency, establishment, or instrumentality of the United States"), the RTC regulators cannot be held vicariously liable for the acts of the bridge banks' employees
 
 
 [2]
 We address only these arguments. We decline to address other arguments which were not fairly presented to the district court in opposing summary judgment. Jones raises these arguments for the first time on appeal, indeed, for the first time in brief to the en banc court. See Part V.C. of this opinion
 
 
 [3]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [4]
 In Vernon II, the court permitted assertion of a tort claim, but that claim involved alleged violations of securities laws and related claims arising from the claimants' purchase of preferred stock and warrants to purchase common stock in the failed institution itself
 
 
 [5]
 This circuit has held:
 [T]he reasoning behind D'Oench, Duhme requires that it be applied to protect the FDIC and FSLIC regardless whether the regulatory body is acting in its capacity as a receiver or as a corporate insurer.
 FSLIC v. Two Rivers Assocs., Inc., 880 F.2d 1267, 1277 (11th Cir.1989). Other decisions of this circuit are in accord. See FDIC v. McCullough, 911 F.2d 593 (11th Cir.1990), cert. denied, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); Vernon v. Resolution Trust Corp., 907 F.2d 1101 (11th Cir.1990). Several other circuits have squarely held that the D'Oench doctrine applies to the FDIC in its capacity as receiver. See Oklahoma Radio Associates v. FDIC, 987 F.2d 685 (10th Cir.1993); Timberland Design, Inc. v. First Serv. Bank for Savings, 932 F.2d 46 (1st Cir.1991); FDIC v. McClanahan, 795 F.2d 512 (5th Cir.1986); FDIC v. First National Finance Co., 587 F.2d 1009 (9th Cir.1978).
 Other circuits, without expressly addressing the issue, have applied the D'Oench rule where the FDIC was acting in its receiver capacity. See FDIC v. Hadid, 947 F.2d 1153 (4th Cir.1991); FDIC v. Bernstein, 944 F.2d 101 (2d Cir.1991); FDIC v. Wright, 942 F.2d 1089 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992); Adams v. Madison Realty & Development, Inc., 937 F.2d 845 (3d Cir.1991); First State Bank v. City and County Bank, 872 F.2d 707 (6th Cir.1989); Firstsouth, F.A. v. Aqua Constr., Inc., 858 F.2d 441 (8th Cir.1988).
 
 
 [6]
 There would be the practical difference that the amount of the set-off would probably be less than the full amount of the note (the pro rata share of the assets of the failed institution likely being less than 100%)
 
 
 [7]
 Dicta in Vernon v. FDIC, 981 F.2d 1230, 1233-34 (11th Cir.1993), could have been interpreted to suggest that D'Oench applies only to claims which directly challenge the validity of a note or mortgage. However, our subsequent decision in OPS Shopping Center, Inc. v. FDIC, 992 F.2d 306, 310 (11th Cir.1993), rejects any implication to that effect and holds that the language in Vernon was dicta