[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11180
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-00750-WKW-SRW

BARBARA A. BRACKIN,
STEVEN A. BUCHANAN,
NYLE H. TRIMBLE,

                                                    Plaintiffs-Appellants,

versus

KEVIN J. ANSON,
in both his official and individual capacity,
CHRISTOPHER DENSON,
in both his official and individual capacity,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(September 25, 2014)

Before JORDAN, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Plaintiffs Barbara Brackin, Steven Buchanan, and Nyle Trimble appeal the district court's grant of summary judgment in favor of their former supervisors, Defendants Kevin Anson and Chris Denson, on various claims arising out of Plaintiffs' termination from the Alabama Department of Conservation and Natural Resources ("Department").  On appeal, Plaintiffs argue that their equal-protection claims, based on a "class-of-one" theory, should have survived summary judgment because they were arbitrarily treated differently than a similarly situated employee.

**I.**

Plaintiffs are all former biologist aides with the Marine Resources Division ("Marine Resources") of the Department.  Defendants were Plaintiffs' supervisors: Anson is the Chief Biologist for Marine Resources; Denson is the Assistant Chief Biologist.  Marine Resources gathers information through surveying and other methods for the purpose of managing recreational fishing activities, such as establishing harvest seasons and setting quantity and size limits.

While employed with Marine Resources, Plaintiffs performed data-collection activities in connection with surveying recreational fishing activities.  Typically, biologist aides worked in teams of two.  Plaintiffs primarily worked with each other, and sometimes Trimble worked with a fellow biologist aide, Jay

2

Gunn, who is not a plaintiff in this case. The biologist aides documented their work on daily-activity reports.

For various reasons, Defendants came to suspect that several Marine Resources employees were failing to perform their assigned duties. Therefore, Defendants installed Global Positioning System tracking devices known as "track sticks" on state-owned vehicles and boats to monitor the movement of these vehicles during Plaintiffs' work hours.

From February 2010 to April or May of that year, Defendants monitored Plaintiffs using the track sticks and compared that data with Plaintiffs' daily-activity reports for the same period. Defendants discovered discrepancies between Plaintiffs' daily reported activities and the information provided by the track sticks, so Defendants confronted and interrogated Plaintiffs about the discrepancies. After the interrogations, Defendants recommended to then-Director of Marine Resources Vernon Minton and Department Commissioner Barnett Lawley that Plaintiffs be terminated. They made this same recommendation as to Gunn. Then, Commissioner Lawley notified Plaintiffs that he had set a pre-termination conference regarding the charges of falsification of records, insubordination, dereliction of duty, and improper claims of compensatory time.

Gunn also received a pre-termination notice and immediately challenged the track-stick data as unreliable. He presented evidence to Director Minton showing

3

that the tracking data did not accurately reflect Gunn's actual activity on the day in question. Thereafter, Gunn was demoted, but he was allowed to remain employed with the Department.

After a joint pre-termination conference at which Plaintiffs submitted evidence that the track sticks were unreliable, Commissioner Lawley notified Plaintiffs that their employment was being terminated. Plaintiffs appealed their terminations to the Alabama State Personnel Board ("Personnel Board"), which upheld their terminations. Before their terminations, Plaintiffs had no disciplinary record and received positive annual performance reviews.

## II.

Plaintiffs filed suit in state court against Defendants, who, in turn, removed the case to the United States District Court for the Middle District of Alabama. Plaintiffs' complaint asserted five counts against Defendants in both their individual and official capacities: (1) denial of equal protection under the Fourteenth Amendment, 42 U.S.C. § 1983; (2) denial of due process under the Fourteenth Amendment, § 1983; (3) conspiracy to violate civil rights, 42 U.S.C. § 1985; (4) state-law defamation; and (5) state-law civil conspiracy. Plaintiffs requested both damages and equitable relief.

Defendants moved for summary judgment, which the district court granted. The court found that Plaintiffs' federal-law claims against Defendants in their

4

official capacities were barred by Eleventh Amendment immunity, that Plaintiffs had abandoned their equal protection and § 1985 conspiracy claims against Defendants in their individual capacities by failing to argue them in their responsive summary-judgment brief, and that Plaintiffs' remaining claims failed either on the merits or as a result of state-law immunity.  This appeal followed.

## III.

We review the district court's grant of summary judgment *de novo*, drawing all reasonable inferences and reviewing all evidence in the light most favorable to the non-moving party.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## IV.

On appeal, Plaintiffs challenge the district court's grant of summary judgment only with respect to the equal-protection claims.[1]  First, based on a "class-of-one" theory of equal protection, Plaintiffs argue that they established a genuine issue of material fact regarding whether they were arbitrarily treated differently than Gunn, a similarly situated employee.  Second, they contend that the Eleventh Amendment did not bar their official-capacity claims because they

---

[1]  We therefore deem abandoned all other issues and claims raised before the district court.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

sought prospective declaratory and injunctive relief.    Third, they assert that Defendants were not entitled to qualified immunity on the individual-capacity claims.

## A.

Defendants argue that we should not hear this appeal for procedural reasons. Specifically, Defendants contend that Plaintiffs abandoned the equal-protection claims on appeal by failing to present any substantive argument to the district court with respect to these claims, including the class-of-one theory on which they now rely.    As a result, Defendants assert, this Court should decline to address Plaintiffs' appeal.

It is well settled that we will not consider on appeal an issue or argument not fairly presented to the district court, unless our refusal to do so will result in a miscarriage of justice. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598-99 (11th Cir. 1995); *see also Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (issues raised for the first time on appeal will not be considered).    Moreover, in opposing a motion for summary judgment, a party may not rely on his or her pleadings to avoid an adverse judgment. *Resolution Trust Corp.*, 43 F.3d at 599.    The parties bear the burden of formulating arguments before the district court, and "grounds alleged in the complaint but not relied upon

6

in summary judgment are deemed abandoned" and will not be considered on appeal. *Id.*

Under the circumstances in this case, we agree that Plaintiffs abandoned their equal-protection claims at summary judgment.  In response to Defendants' summary-judgment motion, Plaintiffs merely noted that Defendants "correctly summarized" their equal-protection claims, reiterated that they were being asserted against Defendants in both their official and individual capacities, and made cursory references to a similarly situated employee who was treated differently. But Plaintiffs did not identify those claims in the table of contents, address the claims in a separate section, make any argument based on relevant legal authority, or identify any material issues of fact specific to those claims.  *See id.*; *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014) (abandonment can occur when a party makes "passing references" to an issue without making any argument or citing to legal authority).  Because Plaintiffs did not fairly present their equal-protection arguments to the district court, we decline to address them for the first time on appeal.[2]  *See Resolution Trust Corp.*, 43 F.3d at 598-99.

---

[2]  Although Plaintiffs technically are correct that the district court disposed of only the individual-capacity equal-protection claims on the basis of abandonment, concluding that all federal-law official-capacity claims were barred by Eleventh Amendment Immunity, our independent review of the record shows that Plaintiffs' equal-protection claims, in their entirety, were abandoned at summary judgment.

**B.**

Even if we were to find that Plaintiffs' equal-protection claims were properly before us, whether asserted against Defendants in their individual or official capacities, the claims fail for the more fundamental reason that the Supreme Court has held that class-of-one equal-protection claims are unavailable in the public-employment context.

Plaintiffs, who were all public employees, do not contend that they were discriminated against on the basis of a protected class, but rather that they were irrationally treated differently than a similarly situated employee. The Supreme Court recognized the general viability of this type of equal-protection claim, referred to as the "class-of-one" theory of equal protection, in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073 (2000). Essentially, "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602, 128 S. Ct. 2146 (2008).

In *Engquist*, however, the Supreme Court addressed the issue presented in this case: whether a public employee can state a claim under the Equal Protection Clause based on the allegation that she was treated differently than a similarly situated employee, without an assertion that the different treatment resulted from the employee's membership in a particular class. *Id.* at 594, 128 S. Ct. 2146. The

8

Court began by explaining that there is a difference between the government's acting as sovereign and the government's acting as proprietor or employer. *Id.* at 598-99, 128 S. Ct. 2416. Because the government's interest in effective and efficient functioning is significantly greater when it acts as employer than when it acts as sovereign, the government has greater leeway in its dealings with citizen-employees than it does with citizens at large. *Id.*

Moreover, employment decisions are "often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify," and therefore are typically characterized by broad discretion. *Id.* at 604-05, 128 S. Ct. 2416. For these and other reasons, the Supreme Court concluded that the class-of-one theory of equal protection is a "poor fit in the public employment context," because it could create a constitutional claim out of nearly every employment decision, thereby impeding effective and efficient government functioning. *See id.* at 605-07, 128 S. Ct. 2416. Consequently, the Court held that "the class-of-one theory of equal protection has no application in the public employment context." *Id.* at 607, 128 S. Ct. 2416.

Plaintiffs acknowledge *Engquist* but argue that it does not apply to their claims because the "primary rationale" for *Engquist* was that allowing class-of-one claims was incompatible with at-will employment. By contrast, they assert, they were not at-will employees because Alabama law authorizes a state employee's

9

discharge for certain reasons only and with certain procedures.

We recognize that the Supreme Court noted that, because of the "historical understanding" of government employment as at will, it was not surprising that it had never found the Equal Protection Clause implicated in the circumstances of the case.  But the Court ultimately did not base its decision on whether public employment is at will.  Indeed, the Court specifically acknowledged that Congress and most States have "replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons."  *Id.* Nevertheless, the Court reasoned, "a government's decision to limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate."  In other words, just because a state government may decide to limit the reasons that an employee may be fired does not somehow cause those state limitations to become equal-protection requirements under the Constitution.  *Id.*  In short, *Engquist* forecloses Plaintiffs' class-of-one equal-protection claims because it holds that the theory "has no application in the public employment context," whether or not the plaintiffs making the claims were at-will employees.

## IV.

We hold that Plaintiffs did not properly present their equal-protection arguments before the district court, and we therefore decline to review them on appeal.  Alternatively, Plaintiffs' class-of-one equal protection claims are barred by

*Engquist*.  Accordingly, we affirm the district court's grant of summary judgment in favor of Defendants.

**AFFIRMED.**